Appeal No. 15-14506

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## GEORGIA TASMAN, LLC

Plaintiff-Appellant,

v.

## NEIL EISNER,

Defendant-Appellee.

---

**On appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division**

**Civil Action No. 1:14-CV-02788-MHC**

---

## BRIEF OF APPELLEE NEIL EISNER

Thomas T. Tate
State Bar No. 698879
ttate@atclawfirm.com
Robert D. Thomas
State Bar No. 278646
rthomas@atclawfirm.com
Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Phone
(770) 822-9680 | Fax

**CERTIFICATE OF INTERESTED PERSONS**

Appellee Neil Eisner, under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, certifies that the following is a complete list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including nay publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Georgia Tasman, LLC

2.    Neil Eisner

3.    Hon. Mark H. Cohen

4.    Beloin, Brown & Blum, LLC

5.    James P. Blum, Jr., Esq.

6.    Schuyler Elliott, Esq.

7.    Andersen, Tate & Carr, P.C.

8.    Graham K. Brantley, Esq.

9.    Robert D. Thomas, Esq.

10.   Thomas T. Tate, Esq.

11.   R. Matthew Reeves, Esq.

12.   McMichael & Gray, P.C.

ii

13.    Randall C. McMichael, Esq.

14.    Edward M. Gray, IV, Esq.

Georgia Tasman, LLC is a privately limited liability company.  Georgia Tasman, LLC is wholly owned by Sherman Hill Holdings, LLC of Wyoming.  Sherman Hill Holdings, LLC is then owned by Tiger and Mermaid Holdings Trust in Australia, and no publicly held corporation owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

The issues in this case are straightforward and the law is well settled in support of the trial court's ruling to grant summary judgment to Appellee. If, however, the Eleventh Circuit feels it would benefit from hearing oral arguments on this matter, Appellee by and through its counsel would welcome the opportunity.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii
STATEMENT REGARDING ORAL ARGUMENT ............................................. iv
TABLE OF CITATIONS ................................................................................... vi
STATEMENT OF ISSUES ................................................................................ 1
STATEMENT OF THE CASE .......................................................................... 2
SUMMARY OF THE ARGUMENT ................................................................. 10
ARGUMENT AND CITATION OF AUTHORITIES ........................................ 12

    A. Appellee Neil Eisner complied with the terms of the Note, which, as a

       matter of Georgia law, take precedence over any conflicting terms in the

       Security Deeds ...................................................................................... 12

    B. Appellant has failed to demonstrate any causal connection between

       Appellee's conduct and Appellant's alleged damages – an essential

       element to claims for both breach of contract and wrongful

       foreclosure............................................................................................ 22

# TABLE OF CITATIONS

**Cases**

*BAC Home Loans Serving, L.P. v. Wedereit*, 759 S.E.2d 867 (2014) .................... 21

*Barnwell v. Hanson*, 80 Ga. App. 738, 57 S.E.2d 348 (1950) ................................ 15

*Branch Banking & Trust Co. v. Lichty Bros. Constr.*, 488 Fed. Appx. 430 (11th Cir. 2012) ................................................................................................. 12

*Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 443 S.E.2d 837 (1994) ......... 25

*Carr v. Kupfer*, 250 Ga. 106 , 296 S.E.2d 560 (1982) ............................................ 12

*Carter v. HSBC Mortg. Svcs.*, No. 14-11898, 2015 WL 4125602 (11th Cir. July 9, 2015) ................................................................................................... 21

*Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 707 S.E.2d 555 (2011) ............. 22

*Duncan v. Lagunas*, 253 Ga. 61, 316 S.E.2d 747 (1984) ....................................... 17

*Elliott v. Wells Fargo Bank*, No. 15-11131, 2015 WL 5559433 (11th Cir. Sept. 22, 2015) ................................................................................................ 21

*Ezuruike v. Bank of New York Mellon*, No. 1:11–cv–4030–JEC, 2012 WL 3989961 (N.D. Ga. Sept.11, 2012) ................................................................................ 24

*Finlay v. Oxford Const. Co.*, 139 Ga. App. 801, 230 S.E.2d 69 (1976) ........... 12, 18

*Garcia v. Am. Marine Corp.*, 432 F.2d 6 (5th Cir. 1970) ....................................... 28

*Grace v. Golden*, 206 Ga. App. 416 (1992) ...................................................... 18, 19

*Harvey v. Deutsche Bank Nat. Trust Co.*, 1:12-CV-1612-RWS, 2012 WL 3516477 (N.D. Ga. Aug. 14, 2012) ............................................................................ 26, 30

*Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App 369, 601 S.E.2d 842 (2004) ............................................................................................. 22, 23

*Hill v. Filsoof*, 274 Ga. App. 474, 618 S.E.2d 12 (2005) ...................................... 27

*Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 669 S.E.2d 179 (2008) .................... 22

*Linam v. Anderson*, 78 S.E. 424 (1913) ................................................................. 19

*Mize v. Woodall*, 291 Ga. App. 349, 662 S.E.2d 178 (2008) ............... 13, 14, 15, 18

*MPP Invs., Inc. v. Cherokee Bank*, 288 Ga. 558, 707 S.E.2d 485 (2011) .............. 18

*Nationwide Logistics, Inc. v. Condor Transp., Inc.,* 270 Ga.App. 277, 606 S.E.2d 319, (2004) ......................................................................................... 12

*Phillips v. Hayes*, 212 Ga. 148, 91 S.E.2d 19 (1956) ............................................ 30

*Rothenberg v. Security Mgmt. Co., Inc.*, 667 F.2d 958 ........................................... 28

*Rourk v. Bank of Am.*, No. 13-15183, 2014, U.S. App. Lexis 18657 (11th Cir. 2014) ................................................................................................. 26

*Salahat v. FDIC*, 298 Ga.App. 624, 680 S.E.2d 638 (2009) ............................ 14, 27

*Stonemill Church, Inc. v. RBC Bank, Inc.*, 315 Ga.App. 138, 726 S.E.2d 632 (2012) ................................................................................................. 14

*Sweeney v. Am. Home Mortg. Servicing*, 2011 WL 710986 (S.D. Ga. 2011) ........ 14

*U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031 (11th Cir. 2008) ................................................................................................. 12

**Statutes**

28 U.S.C. § 1332 ............................................................................ 4, 24

O.C.G.A. § 23-2-114 ..................................................................... 19, 38

## STATEMENT OF ISSUES

1. Whether the district court properly granted summary judgment in reliance on established Georgia law holding that the acceleration terms of the Appellant's promissory note takes priority over conflicting terms in a related security deed.

2. Whether, as an alternative reason to affirm the district court's decision, Appellant is unable to establish that the Appellee's action caused its alleged harm, where Appellant admits that it repeatedly failed to make timely payments on the promissory note, received (but failed to read) written acceleration and foreclosure notices sent to it, and failed to take any action to remedy its default before foreclosure.

## STATEMENT OF THE CASE

1.    Appellant Georgia Tasman, LLC, is a limited liability company created to purchase and hold investment properties for foreign investors located in Australia.  (R. Vol. II, Doc 55-3 at ¶ 4, R. Vol. III, Doc 56-1 at 15:22 – 17:11.)

2.    Georgia Tasman, LLC ("Georgia Tasman") has two members, Gregory Alan Harper and Karen Lee Gothard, (residents of Australia) who own Georgia Tasman.  (R. Vol. III, Doc 56-1 at 15:22 – 16:16.)

3.    Gregory Harper is and always has been Georgia Tasman's manager. (R. Vol. III, Doc 56-1at 16:20-22.)

4.    Mr. Harper owns multiple other real estate investment properties in Australia and in the United States.  (R. Vol. III, Doc 56-1 at 21:22-22:7.)

5.    Appellee Neil Eisner is an individual resident of Florida who conducts business in the State of Georgia.  (R. Vol. II, Doc 55-3 at ¶ 3.)

6.    On November 14, 2011, Appellant and Appellee Eisner entered into a Note related to Neil Eisner's loan of $65,900.00 to Appellant, the proceeds of which were used to fund, in part, Appellant's purchase of two rental properties located at 229 Marsh Glen Drive, Jonesboro, Georgia 30238, and 2364 Bigwood Trail, College Park, Georgia 30349 (collectively, the "Subject Properties").  (R. Vol. II, Doc 55-3 at ¶ 5.)

2

7.    To secure Appellant's obligations under the Note, Appellant contemporaneously executed two substantively identical security deeds for the Subject Properties (collectively, the "Security Deeds"). (R. Vol. II, Doc 55-3 at ¶ 6.)

8.    The Note, which governs Appellant's payment obligations, obligated Appellant to pay a total of $491.50 per month – an amount representing interest only payments on the principal balance of the Note for a period of three years, after which a balloon payment of $65,900.00 would come due in February 2015. (R. Vol. II, Doc 55-3 at Pg 69, § 3.)

9.    Appellant's 30(b)(6) representative and Georgia Tasman's manager, Gregory Harper, read the Note and the Security Deeds prior to signing, and "understood that [he] was entering into a contract and . . . was obviously responsible for payments, and there were penalties if they didn't occur." (R. Vol. III, Doc 56-1 at 43:5-19.)

10.    Following its execution of the Note and Security Deeds, Appellant retained Realty Associates of Atlanta, Inc., to manage the Subject Properties – collecting rents, performing property maintenance, and making the requisite payments on the Note from rent it collected for Appellant. (R. Vol. III, Doc 56-1 at 46:22-53:22.)

3

11.    On or about March 21, 2012, WRI Property Management, LLC ("WRI"), replaced Realty Associates of Atlanta as manager of the Subject Properties – collecting rents, performing property maintenance, and making the requisite payments on the Note from the rent it collected for Appellant.    (R. Vol. II, Doc 55-3 at ¶ 7.)    WRI and Georgia Tasman executed new agreements memorializing the management arrangement.  (R. Vol. III, Doc 56-1 at 54:1-11; 57:14-58:5.)

12.    During the time WRI managed the Subject Properties, Appellant, through WRI, made all requisite monthly payments on the Note.  (R. Vol. II, Doc 55-3 at ¶ 9.)

13.    WRI managed the Subject Properties up and until April 25, 2013, when the relationship was terminated.  (R. Vol. II, Doc 55-3 at ¶ 9.)

14.    On or about April 25, 2013, Georgia Tasman entered into new agreements with Greentree Realty, Inc., for the management of the Subject Properties.  (R. Vol. III, Doc 56-1 at 63:15-23; 69:17-22.)

15.    As the district court held, pursuant to Appellant's new lease management agreements with Greentree Realty, Appellant was obligated "to keep current in all mortgage obligations, property taxes, association fees, or any other obligations which could lead to a foreclosure action against the property." (R. Vol. III, Doc 56-1 at 64:3-16.)

4

16.    The district court further noted that Appellant never discussed who would make payments under the Note with Greentree Realty. (R. Vol. III, Doc 56-1 at 64:24-65:11.)

17.    The lease management agreements with Greentree Realty also had an option to require Greentree Realty to payment mortgage payments out of the rent collected, but Appellant did not elect that option. (R. Vol. III, Doc 56-1 at 66:19-67:8.)

18.    As the district court held, Appellant agreed that, based upon the language in its contract with Greentree Realty, it was Appellant's responsibility to make sure the Note payments were made. (R. Vol. III, Doc 56-1 at 68:15-25; 70:19-71:3.)

19.    From June 2013 through the end of 2013, Appellant collected rent from its tenant at the Marsh Glen Property. (R. Vol. III, Doc 56-1 at 74:8-11.)

20.    After June of 2013, Appellant made no further payments under the Note. (R. Vol. III, Doc 56-1 at 70:19-71:3.)

21.    Appellant does not dispute that it failed to make payments that came due under the Note, a fact noted by the district court. (R. Vol. III, Doc 56-1 at 37:11-17.)

22.    Appellant agrees that by failing to make certain payments under the Note, Appellant defaulted on the Note. (R. Vol. III, Doc 56-1 at 37:11-17.)

5

23.    In its 30(b)(6) deposition, Appellant did not dispute that, upon Appellant's default under the Note, the entire principal balance immediately became due and payable. (R. Vol. III, Doc 56-1 at 37:22-38:10.)

24.    On December 6, 2013, nearly six months after Appellant defaulted under the Note, Appellee, by and through his attorney, sent Appellant certain correspondence (the "December Notices") with the referenced "Acceleration Notice," notifying Appellant of its default and resultant acceleration of the debt due under the Note, as well as Appellee's intent to foreclose and Appellant's right to contest the default within 30 days of notification. (R. Vol. II, Doc 55-3 at ¶ 12.)

25.    Attorney for Appellee, Randy McMichael, sent copies of the December Notices to Georgia Tasman's registered agent (Incorp Services, Inc.), to the address designated by Georgia Tasman in the Note for receipt of notices (the address of a mail forwarding service), and to the Subject Properties themselves. (R. Vol. III, Doc 55-5 at ¶ 3.)

26.    Georgia Tasman does not dispute that both Georgia Tasman's mail forwarding service and Incorp Services, Inc., received the copies of the December Notices mailed by Randy McMichael.  (R. Vol. III, Doc 56-1 at 127: 15-22; 130:13-131:4.)

27.    Georgia Tasman's mail forwarding service forwarded copies of the December Notices from Randy McMichael to Georgia Tasman in Australia on

6

December 28, 2013, which Gregory Harper admitted receiving thereafter. (R. Vol. III, Doc 56-1 at 124:7-21.)

28.    Incorp Services, Inc., forwarded the copies of the December Notices from Randy McMichael to Gregory Harper via email on December 13, 2013. (R. Vol. III, Doc 56-1 at 131:8-132:11.)

29.    Gregory Harper admitted that he deliberately chose not to access the link containing the December Notices because, for work related reasons, he was in a "stressful" period of his life, and engaged in "time management" efforts.    (R. Vol. III, Doc 56-1 at 132:15-133:11.)

30.    The email sent by Incorp Services, Inc., contained a link to the Notices sent by Randy McMichael. (R. Vol. III, Doc 56-1 at 133:12-18.)

31.    Georgia Tasman admitted receipt of the letters sent to both Georgia Tasman's mail forwarding service in Mississippi and to its registered agent, Incorp Services, Inc. (R. Vol. III, Doc 56-1 at 126:7-15.)

32.    In Georgia Tasman's 30(b)(6) deposition, Gregory Harper admitted "that the letters from McMichael and Gray were available to [him] to access . . . on December 13th, 2013," and the district court noted that Appellant "admitted that it received the notices." (R. Vol. III, Doc 56-1 at 135:5-13; R. Vol. XIV, Doc 75 at Pg 4.)

33.    Neither Appellee nor its attorney received any response to the December Notices.  (R. Vol. II, Doc 55-3 at ¶ 13.)

34.    In fact, Appellee never received any explanation from Appellant for its failure to make loan payments, and Appellant never offered to pay its debt after default or request any payoff amount.  (R. Vol. II, Doc 55-3 at ¶¶ 15-17.)

35.    After sending Appellant the December Notices and advertising the statutory foreclosure notices for the requisite period, Eisner foreclosed on the Subject Properties on January 7, 2014, which were sold to Castle Atlanta Holding, L.P. (R. Vol. II, Doc 55-3 at ¶ 18.)

36.    Appellant did not protest the foreclosures, did not contact Appellee about the foreclosures, and did not bid on the Subject Properties at the foreclosure sales.  (R. Vol. II, Doc 55-3 at ¶¶ 14-19.)

37.    In its 30(b)(6) deposition, Appellant admitted that had it paid the Note as it was obligated to do, there would have been no foreclosure.  (R. Vol. III, Doc 56-1 at 161:23-162:1.)

38.    Appellant admitted that had he examined his Bank of America statements he would have most likely discovered he was not making the Note payments.  (R. Vol. III, Doc 56-1 at 115: 8-116; 16.)

39.    Appellant filed the present action on May 5, 2014, in Fulton County Superior Court, some seven months after the foreclosure of the Subject Properties. (R. Vol. I, Doc 1 at Pg 12.)

40.    Following written discovery and depositions, Appellee filed its Motion for Summary Judgment, asking the district court to dismiss Appellant's claims. (R. Vol. I, Doc 55 at Pg 186.)

41.    The Honorable Mark H. Cohen granted Appellee's Motion for Summary Judgment, finding that the terms of the Note take precedence over the conflicting terms in the Security Deeds, and that Appellant failed to present sufficient evidence regarding its claim for chilling the bid.   (R. Vol. XIV, Doc 75 at Pg 199.)

42.    Appellant has chosen only to appeal the district court's decision to grant Appellee's Motion for Summary Judgment dismissing Appellant's claim for wrongful foreclosure. (R. Vol. XIV, Doc 75 at Pg 199.)

## SUMMARY OF THE ARGUMENT

Appellant Georgia Tasman, LLC, a limited liability company formed by Australian investors as a vehicle for taking advantage of the tax shelter provided by Section 8 housing projects, seeks damages from Appellee Neil Eisner related to a foreclosure that was wholly within its power to prevent. Appellant admits that it defaulted on the Note by failing to make monthly payments for over seven months leading up to foreclosure. Appellant admits to receiving written notices informing it of its default, and of the acceleration of the Note and planned foreclosure. Yet, Appellant's managing member was too busy to read its mail or otherwise pay any attention to this investment, thereby allowing the foreclosure to proceed as scheduled.

Through this lawsuit, Appellant seeks absolution for its own transgressions, claiming that the reason it lost its investment property by foreclosure was because the notices sent to it did not contain certain terms regarding acceleration referenced in the Security Deeds. But having chosen not to read the notices, Appellant never would have seen these terms, or taken any action as a result.

Appellant's arguments fail for two primary reasons. First, the Note required no notice prior to the acceleration of the debt following a default in payment, contrary to the terms of the Security Deeds. Because Georgia law gives priority to such terms in a note when they conflict with an attendant security deed, the terms

10

of the Note govern as being part of the "principal obligation." As a result, the entire debt immediately accelerated upon Appellant's default, without the necessity of providing Appellant with any prior notice or right to cure under the Security Deeds.

Second, Appellant has failed to establish any genuine issue of material fact regarding its claim that the purported deficiencies in the notices actually caused it harm. Because any damages Appellant sustained are the bitter fruit of its own failures, this court should affirm the district court's decision below.

## ARGUMENT AND CITATION OF AUTHORITIES

### A. *Appellee Neil Eisner complied with the terms of the Note, which, as a matter of Georgia law, take precedence over any conflicting terms in the Security Deeds.*

As found by the District Court found when granting his Motion for Summary Judgment, Neil Eisner complied with his obligations under the terms governing acceleration of the debt due under the Note – the operative document in the present case. Where, as here, the terms of a promissory note and security deed conflict, the terms of the note take precedence. As a result, Appellant's reliance solely on the conflicting terms of Section 17 of the Security Deeds regarding acceleration is misplaced, as the terms of the Note govern.

Georgia courts[1] agree that, where the terms of a security deed and note conflict, the terms of the note govern as the "principal obligation." In *Finlay v. Oxford Const. Co.*, 139 Ga. App. 801, 802, 230 S.E.2d 69 (1976), for example, the Georgia Court of Appeals held that where a security deed's terms concerning the

---

[1] "When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008). Georgia generally enforces contractual choice of law provisions unless they are contrary to public policy. *See Carr v. Kupfer*, 250 Ga. 106, 107, 296 S.E.2d 560, 562 (1982); *Nationwide Logistics, Inc. v. Condor Transp., Inc.*, 270 Ga.App. 277, 280, 606 S.E.2d 319, 322 (2004). The Note and Security Deeds provide that Georgia law will govern. Exs. B, and C; *see also Branch Banking & Trust Co. v. Lichty Bros. Constr.*, 488 Fed. Appx. 430, 433 (11th Cir. 2012)

12

due date of payments on the underlying promissory note conflicted with the terms of the note itself, the due date set forth in the promissory note governed because the note itself constituted the "principal obligation." *Id.* In that case, the note executed by the parties required payment within 60 days. *Id.* at 801, 230 S.E.2d at 69. The relevant security deed, by contrast, indicated a due date months later than the 60 day period provided by the note. The court held that the 60 day due date set forth in the note governed, "as being the principal obligation." *Id.*

Likewise, in *Mize v. Woodall*, 291 Ga. App. 349, 351, 662 S.E.2d 178, 180 (2008), the court held that relevant payment terms in a promissory note govern over conflicting terms in an associated security deed. *Mize*, 291 Ga. App. at 351, 662 S.E.2d at 180. In that case, Woodall Sr. conveyed certain rights in real property to Woodall Jr. and Veronica Woodall (the "Woodalls"). Attendant with that transfer, the parties executed a promissory note providing for monthly payments for a period of twenty years, with any remaining balance at the death of Woodall Sr. to be "forgiven without further payment." *Id.* By contrast, the associated security deed did not provide for any payment forgiveness upon Woodall Sr.'s death, instead providing that any balance remaining at his death become immediately due and payable. *Id.* The court, noting the general principle that "if a note and security deed contain conflicting provisions, then the note will govern as the principal obligation," determined that the terms of the promissory

13

note governed. *Id.* Thus, because the promissory note provided for forgiveness of the debt upon Woodall Sr.'s death, the Woodalls needed make no further payments – regardless of the conflicting language in the security deed. *Id.*

The present case concerns conflicting payment and debt related terms in the applicable Note and Security Deeds, and, as a result, the terms of the Note take priority over those in the Security Deeds. The Note, for example, provides that Appellant would default on the Note "if [Appellant] fail[ed] to make any payment or comply with any of the terms of this Note . . . ." (R. Vol. 1, Doc 1-3 at Pg 87, ¶ 5(A).) The Note then provides that if Appellant defaults, "then the entire Principal balance, accrued Interest, fees, and collection costs permitted to be collected under applicable law *will be immediately due and payable*." (R. Vol. 1, Doc 1-3 at Pg 87, ¶ 5(B)) (emphasis added). Thus, when Appellant failed to make timely payments, it defaulted on the Note,[2] and the entire balance owed under the Note immediately and automatically accelerated by its own terms, without any

---

[2] Georgia courts routinely enforce note provisions calling for immediate default when a payment is not made on time. *Sweeney v. Am. Home Mortg. Servicing*, 2011 WL 710986 (S.D. Ga. 2011) (language in loan agreement, providing that failure to pay monthly payment on the date it was due triggered a default, enforceable) (Exhibit "A"); *Stonemill Church, Inc. v. RBC Bank, Inc.*, 315 Ga.App. 138, 726 S.E.2d 632 (2012) (enforcing provision of promissory note that a missed payment not remedied within five calendar days automatically results in an event of default); *Salahat v. FDIC*, 298 Ga.App. 624, 680 S.E.2d 638 (2009) (in interpreting a promissory note, courts will enforce the agreement according to its terms).

obligation on Appellee's part to provide notice of default or a right to cure before accelerating the debt. (*Id.*) *See Barnwell v. Hanson*, 80 Ga. App. 738, 742, 57 S.E.2d 348, 351 (1950) ("So it appears to be the settled rule in this State that where the acceleration clause in a note or other instrument for the payment of money is absolute in its terms and not optional with the holder . . . the debt matures without regard to any affirmative action on the part of the holder to declare same due, or to enforce such provision or insist thereon . . . .").

Gregory Harper admitted as much in Georgia Tasman's 30(b)(6) deposition:

Q. Let's turn to the next page, page three. Under Section 5(A), Terms of Default, do you see that section?

A. I do.

Q. At the beginning of that section says, "I will be in default under this note if any of the following things happen: (i) If I fail to make any payment or comply with any of the terms of this Note or any other note with the note holder now or in the future." Do you see that?

A. I do.

Q. You would agree there came a time when you failed to make a payment that came due under the term of the note, correct?

A. Correct.

Q. So under the terms of that provision of the note, you would have been in default, correct?

A. Correct.

Q. If you move to the second section of part B, I should say,

15

entitled Notice of Default.  It says -- do you see that Section B, Notice of Default?

A.    I do.

Q.    You see it says, "If I am in default, then the entire balance, accrued interest, fees, and collection costs permitted to be collected under applicable law will be immediately due and payable."  You see that language, correct?

A.    I do.

Q.    So you understood that if you went into default under the note, that you would, at that point, would be liable for the entire principal balance due under the note, correct?

A.    Well, I can read what it says, and I agree that the intent's entirely clear.  I think the words there are clear.  The intent of the words there is clear.

(R. Vol. III, Doc 56-1 at 36:1-38:10.)

The only reference in this section of the Note to any "notice" at all is the following, which leaves issuance of a notice solely within Appellee's discretion: "[a]t its option or if required by law, the Note Holder may send [Appellant] a written notice informing [Appellant] of said default and acceleration." (R. Vol. I, Doc 1-3 at Pg 125, ¶ 5).  Even this discretionary language does not contemplate notice to Appellant before acceleration occurs, or any right to cure a default; it only references the Appellee's option to inform Appellant after Appellant's default and therefore after acceleration has already occurred.[3]

---

[3] The provision in the Note giving Appellee the option to provide Appellant with

16

Not only does the Note contain no mandatory notice procedures, Appellant affirmatively waived its right to require Appellee to present default or payment notices in Paragraph 8 of the Note, in which Appellant agreed to: "waive [its] rights to require the Note Holder . . . (a) to demand payment of amounts due (known as "Presentment") [and] (b) to give notice that amounts due have not been paid (known as "Notice of Dishonor")." (R. Vol. I, Doc 1-3 at Pg 126, ¶ 8.)

In its Brief, Appellant ignores the terms of the Note, instead focusing on Section 17 of the Security Deeds in isolation. In contrast to the Note, Section 17 of the Security Deeds states that Appellee, prior to accelerating the debt, must give notice to Appellant of the following:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured . . .

(R. Vol. I, Doc 1-3 at Pg 94, ¶ 17.) Thus, there is a clear conflict between the terms of the Note and Security Deeds as to what triggers acceleration of the debt

---

written notice of the fact that Appellant has gone into default, and that the Note has been accelerated, is to be distinguished from loan documents which provide that in the event of default, the creditor has the option to accelerate the debt. In the latter case, since acceleration does not occur automatically upon default, "the exercise of the option to declare acceleration must be communicated to the debtor or manifested by some affirmative act sufficient to constitute notice to the debtor of acceleration." *Duncan v. Lagunas*, 253 Ga. 61, 63, 316 S.E.2d 747, 749 (1984). In the instant case, Appellee was not obligated to notify Appellant that the Note was in default, or that it had been accelerated; nevertheless, Appellee's December Notices to Appellant did inform Appellant of these facts.

17

owed under the Note.[4]    The Note provides that default and acceleration occur immediately upon Appellant's failure to pay on time, with no notice required.   By contrast, the Security Deeds provide that Appellee must notify Appellant of its default and provide a thirty day right to cure before accelerating the debt.

Under both *Mize* and *Finlay*, because the terms of the Security Deed and Note in the present case conflict, the Note, as constituting the "principal obligation," must govern. In other words, Georgia law requires deference to Sections 5 and 8 of the Note, as opposed to Section 17 of the Security Deeds (upon which Appellant relies).   As such, Appellee had no obligation to provide Appellant with notice of default and a right to cure prior to acceleration. Rather, acceleration occurred immediately upon Appellant's failure to make its monthly payments under the Note.

Appellant attempts to contrast the holdings of *Mize* and *Finlay* by arguing that an acceleration clause is not a term that requires deference to the promissory note.  Appellant contends that *Grace v. Golden*, 206 Ga. App. 416 (1992) stands for the proposition that terms governing acceleration of debt take no precedence

---

[4] The conflicting language regarding notice, right to cure and acceleration of the debt set forth in the Note and Security Deeds here is to be distinguished from cases where the loan instruments do not conflict on these matters.   *See, e.g., MPP Invs., Inc. v. Cherokee Bank*, 288 Ga. 558, 707 S.E.2d 485 (2011) (differing notice provisions of note and security deed held not to conflict, such that both were enforceable, where they dealt with "differing points in the life cycle of the note and security deed").

18

over conflicting terms regarding acceleration in the security deed. In that case, which involved neither acceleration clauses nor conflicting terms in the applicable note and security deed, the court of appeals affirmed summary judgment in favor of the grantor of the security deed. *Grace*, 206 Ga. App. at 417. After grantor defaulted on the note and security deed, the grantee filed an action for damages, contrary to exculpatory language in the security deed limiting the grantee's remedies to "the lien, power of sale, or right of foreclosure." *Id.* Affirming, the court held that the security deed's limitation on liability was not a term relating to "debt or interest, or the time for the [debt's] payment," that the security deed's limitation on liability in the event of default did not conflict with the underlying indebtedness evidenced by the note, and, as such, the court held *Finlay* inapplicable. *Id.* As a result, the court affirmed the trial court's grant of summary judgment.

*Grace* is distinguishable from the present case for two reasons: 1) both sides agree that the terms of the note and security deed regarding acceleration conflict; and 2) Georgia courts hold that an acceleration clause is a term that relates to the "debt or interest, or the time for the [debt's] payment."

The court of appeals first announced the rule that courts should defer to a note's terms when those terms conflict with terms in the security deed in *Linam v. Anderson*, 78 S.E. 424, 427 (1913) – a case involving, like the present case,

19

acceleration clauses.  In that case, the note provided that

> . . . in the event any of the interest coupons, or any part thereof, remain unpaid for the space of thirty days after the same shall have become due and payable, then the entire principal, with all arrearages of interest, shall immediately become due and collective, at the option of the holder of this note.

*Id.* at 424-25.   The security deed provided that "if any of said interest coupons should not be promptly paid at its maturity . . . then . . . said principal note, together with all arrearages of interest thereon, shall at once become due and collectible at the option of the holder thereof." *Id.* at 425.  The court found that while it read those provisions not to conflict, it noted, when announcing the general rule that a note's terms take priority over conflicting terms in a security deed, that "[i]f there were any conflict in the conditions *relating to this subject*, the condition recited in the note would govern . . . ." *Id.* at 427 (emphasis added).  The subject – acceleration of a debt – is, by definition, a term relating to the "debt or interest, or the time for the [debt's] payment."  Appellant does not articulate, because it cannot, any argument against that characterization, and, as shown above, Georgia's court of appeals has already rejected, in the very case announcing the rule, Appellant's unsupported position.

Finally, Appellant relies on two recent decisions of this Court in support of

its wrongful foreclosure claim, yet neither case involves conflicting provisions in the relevant note and security deed.[5] This Court references, in both cases, the Georgia Court of Appeals decision in *BAC Home Loans Serving, L.P. v. Wedereit*, 759 S.E.2d 867, 872 (2014) for the proposition that "premature acceleration of a loan can give rise to a claim for wrongful foreclosure." This is a correct statement of the law in a vacuum, but it is neither controlling law nor relevant in this case. Neither *Wedereit* nor either of this Court's decisions in either *Elliott* or *Carter* involve conflicting provisions in the note and security deeds. As a result, none of those cases analyzes or applies the rule relied on by the trial court in this case that the Note's terms take priority over conflicting terms in the Security Deed. Thus, the rule that "premature acceleration of a loan can give rise to a claim for wrongful foreclosure," has no application in this case. Here, upon Appellant's undisputed default, the debt immediately accelerated pursuant to the terms of the Note. Because the terms of the Note and Security Deeds conflict regarding acceleration, the terms of the Note govern. *Linam*, 12 Ga. App. at 725. Because the terms of the Note govern, there has been no premature acceleration of the loan and, as a result, the cases relied upon by Appellant do not control. As a result, the District Court's Order should be affirmed.

---

[5] Appellant cites *Elliott v. Wells Fargo Bank*, No. 15-11131, 2015 WL 5559433 (11th Cir. Sept. 22, 2015), and *Carter v. HSBC Mortg. Svcs.*, No. 14-11898, 2015 WL 4125602 (11th Cir. July 9, 2015).

21

**B. Appellant has failed to demonstrate any causal connection between Appellee's conduct and Appellant's alleged damages – an essential element to claims for both breach of contract and wrongful foreclosure.**

Appellant received – yet consciously chose not to read - the December Notices. As a result, it simply did not matter whether the Notices contained the information Appellant contends they should have, as Appellant would not have seen the "missing" language in any event. The language of the December Notices is thus not the cause of the harm claimed by Appellant, and because causation constitutes a fundamental element of wrongful foreclosure and breach of contract claims, the trial court correctly dismissed Appellant's claims.

Both breach of contract and wrongful foreclosure actions require proof of a causal connection between the alleged breach and the resultant damages. To prove a breach of contract claim, a plaintiff must establish "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371, 669 S.E.2d 179 (2008); *see also Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 320, 707 S.E.2d 555, 559 (2011). Similarly, to successfully assert a claim for wrongful foreclosure, a plaintiff must "establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App 369, 371, 601 S.E.2d 842 (2004). In the present case, Appellant has failed to

present *any* evidence demonstrating a causal connection between the alleged defective notice (the only alleged improper conduct) and Appellant's alleged injury.

Georgia courts routinely dismiss breach of contract and wrongful foreclosure claims at the summary judgment stage when, as in this case, there exists little to no evidence indicating the alleged injury was caused by anything other than a plaintiff's own acts. In *Heritage Creek*, for example, the Georgia court of appeals affirmed the grant of the appellee's motion for summary judgment when it found that the appellant failed to demonstrate a causal connection between alleged technical deficiencies in a foreclosure notice and appellant's alleged damages. The court first noted that "even where a borrower has established duty and breach of duty, it still needs to show a causal connection between the defective notice and the alleged injury." *Heritage Creek*, 268 Ga. App. at 371, 601 S.E.2d at 844-45. The court then held that

> [n]ot only did [appellant] default on the loan payments on multiple occasions, it failed to cure the default pursuant to the terms of the loan agreement; it received the foreclosure notice, but did not bid on the property at the foreclosure sale; and it requested and was granted an opportunity to repurchase the property after the foreclosure sale, then failed to tender the purchase price . . . .

*Id.* at 372, 601 S.E.2d at 845. In other words, "Heritage Creek's alleged injury was solely attributable to its own acts or omissions both before and after the

23

foreclosure." *Id.* Thus, the court determined that "Heritage Creek failed to show in any particular how the end result would have been different" had there been no alleged technical deficiency in the advertisement and, as a result, was not entitled to summary judgment. *Id.*

In *Ezuruike v. Bank of New York Mellon*, No. 1:11–cv–4030–JEC, 2012 WL 3989961, at *1–2 (N.D. Ga. Sept.11, 2012) (Exhibit "B"), the court determined that, even assuming the plaintiff successfully alleged a duty and breach in a wrongful foreclosure claim, the plaintiff could "not receive damages because she has not sufficiently alleged causation." In that case, the plaintiff relied, as does Appellant here, entirely on a technical deficiency in the notice, alleging that "the notice only included the requisite information for Wells Fargo, and that Wells Fargo lacked full authority to negotiate, amend, and modify the terms of her mortgage." *Id.* The court, assuming this to be true, held that because the plaintiff "failed to allege how the end result would have been different if she had received a statutorily sufficient notice of foreclosure," the plaintiff "failed to sufficiently allege causation," and her claim failed as a matter of law. *Id.* Specifically, the plaintiff failed to allege that "she would have been able to cure her default, [or] that she would have been able to successfully petition for a loan modification." *Id.* at n.1. Ultimately, the court, noting with evident distaste the frequency of claims like those presented by Appellant in the present case, opined:

> [i]n short, lacking a substantive defense that they are in compliance with their mortgage obligations, such debtors seek to forestall the return of their property to the creditor who is not being paid by mounting an argument that the foreclosure notice is not in technical compliance with the applicable Georgia statute. Technical arguments can, of course, sometimes be as successful as substantive positions, but whether or not there is merit to this argument by plaintiff is beside the point as to an attempted wrongful foreclosure claim. That is, plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition.

*Id.*

As is evident from the holdings in both *Heritage Creek* and *Ezuruike*, merely alleging defects in an acceleration notice, foreclosure notice, or a foreclosure advertisement, is not enough, by itself, to state a claim for wrongful foreclosure in Georgia. In *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 443 S.E.2d 837 (1994), for example, the property owner in default sued for damages after the bank foreclosed on her property without providing her with proper notice of default. She contended that the foreclosure itself caused her injury, and because the lack of proper notice rendered the foreclosure technically unlawful, she was entitled to damages. *Id.* The Supreme Court of Georgia disagreed, finding that:

> [t]he bank's failure to provide proper notice constituted a breach of the duty to fairly exercise the sale created by O.C.G.A. § 23-2-114. Having established duty and breach, however, [the mortgagor] still needed to show a causal connection between the lack of notice and the alleged injury.

264 Ga. at 286. Thus, plaintiff's failure to present evidence linking her alleged

25

harm to the improper notice undermined entirely the legitimacy of her claim. *See Rourk v. Bank of Am.*, No. 13-15183, 2014, U.S. App. Lexis 18657, at *6-7 (11th Cir. 2014) (unpublished decision) ("Under these circumstances, Rourk had an objection to continue making payments she knew she owed, and Rourk's nonpayment is fatal to her claim for breach of contract and wrongful foreclosure, as her alleged injury was solely attainable to [her] own acts or omissions.'" (quoting *Heritage Creek*, 248 Ga.App. at 372, 601 S.E.2d at 845)).

In the present case, Appellant made its last payment on the Note on June 5, 2013 – some six months prior to Appellee's December Notices, and some seven months prior to foreclosure. (R. Vol. I, Doc 55-2 at ¶¶ 20, 21, 35.) *See, e.g., Harvey v. Deutsche Bank Nat. Trust Co.*, 1:12-CV-1612-RWS, 2012 WL 3516477, *2 (N.D. Ga. Aug. 14, 2012) (Exhibit "C") ("Failure to make the proper loan payments defeats any wrongful foreclosure claim."). It is undisputed that Appellant received the December Notices, and Appellant has given no explanation for its failure to dispute the alleged debt. (R. Vol. I, Doc 55-2 at ¶¶ 33, 34.) In fact, Appellant never contested its default on the Note prior to foreclosure, and has not done so in its pleadings before this Court. (R. Vol. I, Doc 55-2 at ¶¶ 22, 33.) Moreover, Appellant failed entirely to respond to the December Notices and other correspondence from Eisner's representatives, which it received well in advance of the foreclosures. (R. Vol. I, Doc 55-2 at ¶¶ 32-33.)

26

Appellant never sought to address its default under the Note, either through making a payment, requesting a payment plan, or seeking to modify the terms of the loan. (R. Vol. I, Doc 55-2 at ¶¶ 33-34.) *See, e.g.*, *Salahat v. FDIC*, 298 Ga. App. 624, 680 S.E.2d 638 (2009) (finding that absent evidence that the debtor actually attempted to cure defaults, acceleration of the maturity of a loan prior to the expiration of a cure period was not improper because no harm was caused to the debtor.)    Despite receiving rental income from the Subject Properties, Appellant never tendered any payments on the Note after June 5, 2013, and never requested information on payoff amounts. (R. Vol. I, Doc 55-2 at ¶ 33.)[6] Appellant admitted that, had it studied its own bank statements, it would have realized the Note payments were not being made.  (R. Vol. I, Doc 55-2 at ¶ 38.)  Despite a provision in the December Notices providing Appellant with thirty days to dispute the debt, Appellant failed to engage with Appellee or his representatives to do so. (R. Vol. I, Doc 55-2 at ¶¶ 33, 34.)  As the District Court found, Appellee sent the December Notices, Appellant received the December Notices, and Appellant chose not to read the December Notices.  (Order.)  If Appellant did not read the December Notices, then it simply makes no difference what information those

---

[6] *See, e.g.*, *Hill v. Filsoof*, 274 Ga. App. 474, 475-76, 618 S.E.2d 12, 14 (2005) ("Before one who has given a deed to secure his debt can have set aside in equity a sale by the creditor in exercise of the power conferred by the deed . . . [she] must pay or tender to the creditor the amount of principal and interest due . . . [n]either fraud nor poverty constitute an equitable excuse for failure to tender.").

notices contained.  In short, Appellant has put forth no evidence demonstrating that any alleged technical defect in the December Notices caused its alleged injury.

Finally, and perhaps most importantly, Appellant admitted that had it made the payments on the Note, there would have been no foreclosure:

> Q.    Well, if you had paid the note as you were obligated to do, there would have been no foreclosure, correct?
>
> A.    If I had paid, correct.

(R. Vol. I, Doc 55-2 at ¶ 37.)

The only evidence Appellant belatedly attempts to bring to this Court's attention in order to establish causation, that Appellant had the wherewithal to pay its debt in full, cannot be considered by this Court as it was not brought to the trial court's attention below.  *Rothenberg v. Security Mgmt. Co., Inc.*, 667 F.2d 958, n. 8 ("Normally, an appellate court will not consider facts that were not presented to the district court"); *Garcia v. Am. Marine Corp.*, 432 F.2d 6, 8 (5th Cir. 1970) ("It is fundamental that facts not presented at trial may not be asserted on appeal.") As a result, this Court should decline to entertain this factual allegation raised for the first time on appeal.  (*See* R. Vol. III, Doc 57 at Pg 41 and Doc 57-1 at Pg 46; R. Vol. VI, Doc 57-2 at Pg 3; R. Vol. X, Doc 62 at Pg 3; R. Vol. XI, Doc 63 at Pg 103; R. Vol. XII, Doc 67 at Pg 37; and R. Vol. XIV, Doc 69 at Pg 3.)

Even if this Court could consider Appellant's newly asserted claim that it could pay its debt in full, this fact alone is insufficient to raise a genuine issue of

material fact as to causation.  Simply alleging the financial wherewithal to pay off a loan amount in full is not evidence, in any sense, sufficient to create a genuine issue of material fact in this case, considering the weight of the evidence discussed in detail above.  Appellant chose not to read the December Notices.  Had it done so, it would have been alerted to its default, and confronted with a demand to pay the Note in full, presumably it would have used the funds it claims to have had available to it to pay off its debt in order to avoid foreclosure.  Yet this is not evidence that the alleged technical deficiencies in the December Notices caused Appellant's harm.  On the contrary, it demonstrates yet again why the Appellant's decision not to read the December Notices is the true cause of any loss it suffered from foreclosure.

## CONCLUSION

Despite defaulting on the Note by failing to make its requisite payments, refusing to engage for seven months, and failing and refusing to respond to the December Notices, Appellant seeks to place the blame for the loss of the Subject Properties on technical defects in a notice that Appellee was not required to send and that Appellant admits it did not read when he received it on December 13, 2013.  (R. Vol. I, Doc 55-2 at ¶¶ 29-32.)  As Appellant has failed to establish any causal connection between Appellee's conduct and Appellant's damages, the trial court correctly granted summary judgment on Appellant's claims.  *See Harvey*,

2012 WL 3516477, at *2 ("When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure."); *Phillips v. Hayes*, 212 Ga. 148, 91 S.E.2d 19 (1956) ("Neither equity nor law will assist those who neglect to take care of themselves.") The district court's decision should be affirmed.

This 16th day of December, 2015.

Respectfully submitted,

ANDERSEN, TATE & CARR, P.C.

/s/ Robert D. Thomas

_____

Thomas T. Tate
State Bar No. 698879
ttate@atclawfirm.com
Robert D. Thomas
State Bar No. 278646
rthomas@atclawfirm.com
Attorneys for Appellee Neil Eisner

One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Phone
(770) 822-9680 | Fax

30

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that this document was prepared using the Microsoft Word 2010 word processing program; (b) that the foregoing pleading has been prepared with 14 point Times New Roman font, and (c) contains 8,112 words:

This 16th day of December, 2015.

/s/ Robert D. Thomas

_____

Thomas T. Tate
State Bar No. 698879
ttate@atclawfirm.com
Robert D. Thomas
State Bar No. 278646
rthomas@atclawfirm.com
Attorneys for Appellee Neil Eisner

2508612_1.docx

## CERTIFICATION OF SERVICE

I hereby certify that I have this day served counsel for the opposing party in the foregoing matter with a copy of the **Brief of Appellee** through the ECF system and by placing same into the United States Mail with adequate, postage affixed thereto:

James P. Blum, Jr., Esq.
Beloin, Brown & Blum, LLC
2550 Heritage Court, Suite 200
Atlanta, Georgia  30339

Schuyler Elliot, Esq.
The Mecca Building
2024 Beaver Ruin Road
Norcross, Georgia  30071

This 16th day of December, 2015.

/s/ Robert D. Thomas

_____

Thomas T. Tate
State Bar No. 698879
ttate@atclawfirm.com
Robert D. Thomas
State Bar No. 278646
rthomas@atclawfirm.com
Attorneys for Appellee Neil Eisner

2508612_1.docx

1

Case: 15-14506    Date Filed: 12/16/2015    Page: 40 of 49

EXHIBIT
"A"

Blumberg No. 5119

2011 WL 710986
Only the Westlaw citation is currently available.
United States District Court,
S.D. Georgia,
Savannah Division.

Donald SWEENEY, Plaintiff,

v.

AMERICAN HOME MORTGAGE
SERVICING, INC., et al., Defendants.

No. 4:10–cv–111.    |    Feb. 22, 2011.

**Attorneys and Law Firms**

J. Scott Vaughan, Royal & Vaughn, LLC, Savannah, GA, for Plaintiff.

Elizabeth B. Davis, J. Christopher Fox, Russell J. Rogers, Thompson Hine, LLP, Atlanta, GA, for Defendants.

## *ORDER*

B. AVANT EDENFIELD, District Judge.

**\*1** This case is before the Court on Motion for Summary Judgment filed by Defendants American Home Mortgage Servicing, Inc. ("AHMSI") and U.S. Bank National Association, as Trustee for TBW Mortgage–Backed Pass–Through Certificates, Series 2007–2 (the "Trustee") (collectively "Defendants"). *See* Doc. 24.

## I. BACKGROUND FACTS

In his Complaint, Plaintiff Donald Sweeney ("Sweeney") seeks injunctive and declaratory relief to avoid foreclosure. *See* Doc. 1, Ex. A. On January 4, 2007, Sweeney entered into a home loan with First National Bank that had a principal amount of $717,000 secured by the property located at 6 Hasleiters Retreat, Savannah, Georgia 31411 (the "Loan"). *See id.* at 2–3; Doc. 24–6. On the same date, Sweeney executed a deed to secure the Loan ("Security Deed"). *See* Doc. 24–4.

Defendants allege that Sweeney failed to make Loan payments in August, September, October or November 2009, and that he has made no payments since December 2009. *See* Doc. 24–1 at 4. Defendants further allege that, although Sweeney may disagree with a portion of the balance due on the Loan, he has never tendered or offered to tender the undisputed amount due on the Loan. *See id.*

Sweeney claims that his payments for the months of August, September, October and November 2009, were not credited to his account, *see* Doc. 29–8 at 1. He offers evidence of only one such payment, in the amount of $4,033.13, dated August 11, 2009. *See* Doc. 29–5. Sweeney admits that he has made no payments since December 2009. *See* Doc. 25, ¶ 13; Doc. 30, ¶ 13. Sweeney denies, however, that his failure to pay amounts to default. *See* Doc. 30, ¶ 14.

On March 1, 2010, the Trustee sent Sweeney a letter entitled "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. 1692 INITIAL COMMUNICATION LETTER." *See* Doc. 29–6 ("Fair Debt Letter"). The Fair Debt Letter gives Sweeney thirty days to dispute the debt. *See id.* at 1. The letter appears to state that, despite the thirty-day dispute period, the Trustee's representative "may commence the foreclosure action without waiting thirty (30) days, if so requested by our client." *Id.*

The letter also informs Sweeney that, as of March 1, 2010, he owes $749,590.20 on the Loan, and includes contact information for the Trustee's loss mitigation department, in the event Sweeney was interested in curing the default. *See id.*

On the same date, in a separate letter, the Trustee notified Sweeney that because he had defaulted on the Loan, the property securing the Loan would be held for public sale on April 6, 2010. *See* Doc. 29–7 at 2 ("Foreclosure Sale Letter"). In the Foreclosure Sale Letter, the Trustee references the Fair Debt Letter, and states: "That letter also advised you of certain rights ("Borrower's Rights" which include your right to validate the debt) you could exercise within 30 days of your receipt of the [Fair Debt Letter]. Nothing in this letter will prevent you from exercising the Borrowers' Rights as explained in the [Fair Debt Letter]." *See id.* at 1.

Sweeney v. American Home Mortg. Servicing, Inc., Not Reported in F.Supp.2d (2013)

Case: 15-14506    Date Filed: 12/16/2015    Page: 41 of 49

**\*2** The Foreclosure Sale Letter further advised Sweeney that it served as "a formal demand for immediate payment of the total indebtedness," and that "your loan *has been accelerated* and foreclosure proceedings will continue." *Id.* at 2 (emphasis added). The letter explains that "[a]ny partial payment received [by the Trustee] on the subject debt after the date of this letter will be applied to the reduction of the aforesaid debt and will not result in reinstatement or a deceleration of the loan." *See id.*

Based on the facts in the record, Defendants ask the Court to grant their Motion for Summary Judgment, and find that Sweeney is not entitled to enjoin foreclosure. *See* Doc. 24–1.

## II. MOTION FOR SUMMARY JUDGMENT
Summary judgment is generally appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.,* 941 F.2d 1428, 1437 (11th Cir.1991).

"The moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [his] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.,* 161 F.3d 1290, 1294 (11th Cir.1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "

*Four Parcels,* 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## A. Sweeney's Default
Neither party disputes the existence or the validity of the Loan or the Security Deed. Sweeney claims that he is not in default because Defendants failed to comply with the terms of the acceleration clause in the Security Deed. *See* Doc. 29–1 at 4.

The Security Deed provides:

**22. Acceleration; Remedies.**

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, *not less than 30 days from the date the notice is given to the Borrower,* by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and other remedies permitted by Applicable Law, Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**\*3** *See* Doc. 24–7 at 12 (emphasis added).

In the Motion for Summary Judgment, Defendants argue that "[p]aragraph 22 of the Security Deed provides that, if Mr. Sweeney falls into default by failing to make the monthly installment payments

Sweeney v. American Home Mortg. Servicing, Inc., Not Reported in F.Supp.2d (2011)

Case: 15-14506    Date Filed: 12/16/2015    Page: 42 of 49

required by the Note, the Lender may require immediate payment of the Loan in full, and may sell the Property by non-judicial foreclosure." Doc. 24–1 at 3. This is plainly *not* a fair reading of paragraph 22.

The Security Deed requires that the borrower be given at least thirty-days' notice and an opportunity to cure *prior to* acceleration. As the Court explains below, Defendants have not presented evidence that they abided by these terms.

Sweeney's position that he is not in default because the acceleration notice was improper, however, is no more tenable. Whether acceleration is proper does not determine default status. The Loan agreement states:

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

...

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is3 due, I will be in default.

*See* Doc. 24–6 at 3.

An unambiguous contract must be read and enforced according to the plain meaning of its terms. *See Begner v. United States,* 428 F.3d 998, 1005 (11th Cir.2005) (stating that if the contract "language is clear and unambiguous," the court "simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning").

This legal precept applies equally to the interpretation of loan agreements and security deeds. *See Rapps v. Cooke,* 246 Ga.App. 251, 253, 540 S.E.2d 241 (2000) ("Under Georgia law, it is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.") (citing *Gordon v. S. Cent. Farm Credit, ACA,* 213 Ga.App. 816, 817, 446 S.E.2d 514 (1994)); *REL Dev., Inc. v. Branch Banking & Trust Co..,* 305 Ga.App. 429, 433, 699 S.E.2d 779 (2010) (looking to the terms of the contracts between the parties to determine operation of acceleration and foreclosure provisions).

Here, the Loan agreement requires nothing more than a failure to pay to trigger default status. Even under Sweeney's version of the facts, he has failed to make any loan payments since December 2009. *See* Doc. 30, ¶ 13 (Sweeney's admission, in his response to Defendants' statement of undisputed material facts dated November 29, 2010, that he had not made any Loan payments since December 2009). No genuine issue of material fact exists on this issue. Sweeney is in default due to his failure to make required monthly payments.

**B. Defendants' Acceleration and Foreclosure**
Whether Defendants have abided by the terms of the contracts in acting on Sweeney's default is a separate question.

Both the Loan agreement and the Security Deed require Defendants to give thirty-days' notice of acceleration. *See* Doc. 24–6 at 3 (Loan agreement states that, following default, acceleration date "must be at least 30 days after the date on which the notice is mailed to me"); Doc 24–7 at 12 (Security Deed states that notice of default must include certain information, including "a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured" and notice that the "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured ... and sale of the Property").

*4 The parties could have agreed to acceleration without notice, but did not. The Defendants are, therefore, bound by contract terms. *See Duncan v. Lagunas,* 253 Ga. 61, 63, 316 S.E.2d 747 (1984) ("where the parties agree that in the event of default the creditor 'may declare' acceleration, the exercise of the option to declare acceleration must be communicated to the debtor ..., but where the parties agree that in the event of default the creditor 'may declare' acceleration 'without notice' to the debtor, ... according to the agreement, notice of the declaration of acceleration need not be communicated to the debtor.") (citing *Fulton Nat'l Bank v. Horn,* 239 Ga. 648, 650, 238 S.E.2d 358 (1977)).

Defendants have failed to provide Sweeney with sufficient notice. The Foreclosure Sale Letter, which is the first evidence in the record that Defendants

Sweeney v. American Home Mortg. Servicing, Inc., Not Reported in F.Supp.2d (2013)

Case: 15-14506    Date Filed: 12/16/2015    Page: 43 of 49

provided notice of default, states that "your loan *has been accelerated* and foreclosure proceedings will continue." *See* Doc. 29–7 at 2 (emphasis added). Sweeney was not given an opportunity to cure the default before receiving this letter.

Under the terms of the Security Deed, the Defendants' failure to properly notify Sweeney of acceleration also prevents immediate foreclosure. The Security Deed ties acceleration and foreclosure together, stating that, following notice of default, "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower ..." *See* Doc. 24–7 at 12.

Because Defendants failed to comply with the notice requirement for acceleration, and because the terms of the contract tie acceleration to foreclosure, Defendants do not presently have the right to foreclose on Sweeney's Loan.

The Court notes, however, that the Loan agreement also includes the following provision:

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Doc. 24–6 at 3. In other words, Defendants failure to comply with notice requirements in March 2010 does not prevent them from providing proper notice of default at a later date.

**C. Availability of Injunctive Relief**
Despite Defendants failure to provide proper notice of acceleration, injunctive relief is unavailable to Sweeney. Under Georgia law, "[a] borrower who has executed a deed to secure debt is not entitled to enjoin a foreclosure sale unless he first pays or tenders to the lender the amount admittedly due." *Nicholson v. OneWest Bank,* 2010 WL 2732325, at *5 (N.D.Ga. Apr.20, 2010) (citing *Michel v. Pickett,* 241 Ga. 528, 535, 247 S.E.2d 82 (1978)); *see also Wright v.*

*Intercounty Props., Ltd.,* 238 Ga. 492, 493, 233 S.E.2d 160 (1977).

This rule is not absolute. *See, e.g., Mitchell v. Interbay Funding, LLC,* 279 Ga.App. 323, 325, 630 S.E.2d 909 (2006) ("It is true that a tender is unnecessary where the person to whom the money is due states that the tender would be refused if made.") (internal citation omitted); *Wright,* 238 Ga. at 493, 233 S.E.2d 160 (noting that exceptions exist to the tender rule).

**\*5** Here, Sweeney admits that he has made no payments since December 2009, but argues that his non-payment is justified, or at least excusable, because Defendants have dealt with him in bad faith by refusing to tell him how much he owes on the Loan. *See* Doc. 29–1 at 2–4 ("Plaintiff Sweeney has continued to ask for an accounting as to what amount is properly due ... To date there has been no such providing of the information needed.").

Even assuming that bad faith is an exception to the tender rule, Sweeney's argument fails. In support of his position, Sweeney cites *West v. Koufman,* 259 Ga. 505, 384 S.E.2d 664 (1985). In *West,* the Court enjoined John Q. West ("West") from foreclosing on Douglas Koufman's ("Koufman") property. *See id.* at 505, 384 S.E.2d 664. Koufman alleged that West solicited friends to take out false liens against the property. *See id.* Koufman paid two liens as soon as he received notice of filing, but contested the validity of two others. *See id.* The court held that the solicitation of false liens, if proved, would constitute a breach of the duty of good faith and fair dealing implied in all contracts, and affirmed the interlocutory injunction against foreclosure. *See id.* Sweeney has made no allegations, much less offered any evidence, of such under-handed dealings in this case.

Because Sweeney has failed to tender the undisputed amount due on the Loan, injunctive relief is unavailable to him.

**III. CONCLUSION**
Defendants' Motion for Summary Judgment, *see* Doc. 24, is *GRANTED* with respect to Plaintiff's claim for injunctive relief, but *DENIED* with respect to Plaintiff's declaratory judgment claim.

Sweeney v. American Home Mortg. Servicing, Inc., Not Reported in F.Supp.2d (2011)

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 710986

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.



EXHIBIT
"B"

2012 WL 3989961
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia,
Atlanta Division.

Regal EZURUIKE, Plaintiff,
v.
The BANK OF NEW YORK
MELLON, Defendant.

Civil Action No. 1:11–cv–
4030–JEC.    |    Sept. 11, 2012.

**Attorneys and Law Firms**

Regal Ezuruike, Atlanta, GA, pro se.

Brett Christian Giordano, Jimmy Thomas Howell, Jr.,
Kyle Clark Spurgeon, McCalla Raymer, LLC, Atlanta,
GA, for Defendant.

### ORDER AND OPINION

JULIE E. CARNES, Chief Judge.

**\*1** This case is before the Court on the Magistrate
Judge's Final Report and Recommendation [29]
recommending granting in part and denying in part
defendant's Motion to Dismiss [5], dismissing this
action without prejudice, denying defendant's Motions
to Strike [27, 28], and cancelling the Notice of
Lis Pendens [5]. In short, the magistrate judge
recommended that the complaint be dismissed without
prejudice, instead of with prejudice as requested by the
defendant.

On June 7, 2012, plaintiff filed Objections [30] to
the Report and Recommendation [29]. The Court
has reviewed the Final Report and Recommendation
[29]. Like the magistrate judge, the Court agrees that
dismissal without prejudice is appropriate. The Court
will, however, give the plaintiff **until October 12,
2012** to file an amended complaint addressing the
defects in his complaint. Should plaintiff fail to do so,
an Order will be issued dismissing his claims without
prejudice.

### DISCUSSION

**I. DOES PLAINTIFF CLAIM WRONGFUL
FORECLOSURE OR WRONGFUL ATTEMPTED
FORECLOSURE?**

First, as noted in both the defendant's Motion
to Dismiss and the magistrate judge's Report and
Recommendation, plaintiff's Complaint is garbled and
barely coherent. As best the Court can determine from
reading the Complaint and the other pleadings in the
case, the plaintiff has ceased making his mortgage
payments and the entity holding the security deed
began efforts to foreclose on the property. There
is no indication that foreclosure ever occurred. To
the contrary, as plaintiff's Complaint requests an
injunction to stop any foreclosure sale, one must infer
that foreclosure has not actually occurred.

As apparently no foreclosure sale has occurred nor
is there any indication in this record that one is
currently scheduled, plaintiff's claim must necessarily
be interpreted as a claim for wrongful attempted
foreclosure, not for wrongful foreclosure. *Mayrant
v. Deutsche Bank Trust Co. Americas,* Civil Action
File No. 1:10–CV–3094–TWT, 2011 WL 1897674,
at \*2 (N.D.Ga. May 17, 2011) (Thrash, J.). To show
wrongful attempted foreclosure, the plaintiff must
establish "a knowing and intentional publication of
untrue and derogatory information concerning the
debtor's financial condition, and that damages were
sustained as a direct result of this publication," citing
*Aetna Finance Co. v. Culpepper,* 171 Ga.App. 315,
319, 320 S.E.2d 228 (1984).

Here, the plaintiff does not allege that he had *not*
defaulted on his mortgage obligation; instead, he
seems to be alleging only that the defendant was not
the right entity to call him to task for that breach
and therefore that *this* defendant should have no
power to foreclose. Likewise, plaintiff has failed to
allege that he sustained damages as a result of the
publication. *Sellers v. Bank of Am., Nat'l Ass'n,* Civil
Action No. 1:11–CV–3955–RWS, 2012 WL 1853005,
at \*3 (N.D.Ga. May 21, 2012) (Story, J.) (dismissing
attempted wrongful foreclosure claim, because while
plaintiffs alleged that the defendants lacked authority
to foreclose, plaintiffs failed to allege sufficient facts to

show with plausibility that they suffered any damage as a result.)

**\*2** Here, plaintiff appears to be alleging that the defendant will not be the proper entity to foreclose on the property. In doing so, plaintiff is repeating a familiar argument that is often made by debtors who have defaulted on their mortgage, but who nonetheless seek to delay and prevent foreclosure of property on which they have ceased to make payments. In short, lacking a substantive defense that they are in compliance with their mortgage obligations, such debtors seeks to forestall the return of their property to the creditor who is not being paid by mounting an argument that the foreclosure notice is not in technical compliance with the applicable Georgia statute. Technical arguments can, of course, sometimes be as successful as substantive positions, but whether or not there is merit to this argument by plaintiff is beside the point as to an attempted wrongful foreclosure claim. That is, plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition.

Accordingly, to the extent that plaintiff is making a claim for wrongful attempted foreclosure, that claim is dismissed.

## II. *STATE FRAUD CLAIM*
To the extent that plaintiff is attempting to advance a fraud claim, defendant correctly notes that he has not alleged with particularity facts that would support the elements of such a claim. (Def.'s Mot. Dismiss [5] at 9–10.) Should plaintiff wish to file an amended complaint alleging fraud, he should set out the specific facts that would plausibly support such a claim, as described in defendant's response brief.

## III. *FEDERAL RESPA AND FDCPA CLAIMS*
As with his fraud claim, plaintiff's RESPA claim is deficient, as it lacks sufficient factual detail to set out a plausible claim. Should plaintiff wish to file an amended complaint alleging a RESPA violation, he should set out, with specificity, all factual elements of the statute, including a specification of the damages he has incurred as a result of the alleged violation.

As to plaintiff's FDCPA claim, at the time of the defendant's motion to dismiss, there were no legal decisions that would arguably support the plaintiff's position. Since that time, the Eleventh Circuit has issued decisions that might support an FDCPA claim against the entity that sent plaintiff a debt collection letter regarding his mortgage. Plaintiff, however, has sued only the Bank of New York Mellon, which may not occupy that status. Accordingly, plaintiff's claim, as presently stated, does not state an FDCPA claim against the existing defendant, nor does it set out with adequate specificity facts that would support a claim against any defendant.

The Court will, however, permit the plaintiff to amend his complaint to reallege, correctly, an FDCPA claim. To assist him in that endeavor, the Court has attached to his copy of the Order the three Eleventh Circuit cases referenced above: *Bourff v. Rubin Lublin, LLC,* 674 F.3d 1238 (11th Cir.2012); *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211 (11th Cir.2012); and *Shoup v. McCurdy & Candler, LLC,* 465 Fed. App'x 882 (11th Cir.2012).

## IV. *INJUNCTIVE RELIEF*
**\*3** The Court concurs with the magistrate judge that no injunctive relief, such as an order to stop a foreclosure sale, is appropriate. Under Georgia law, a debtor who executes a security deed and defaults on a loan cannot enjoin foreclosure, or otherwise obtain equitable relief to cancel the deed, unless the debtor has first paid or tendered the amount due on the loan. *Taylor, Bean & Whitaker Mortg. Corp. v. Brown,* 276 Ga. 848, 850, 583 S.E.2d 844 (2003).*See also Hill v. Filsoof,* 274 Ga.App. 474, 475, 618 S.E.2d 12 (2005) ( " 'Before one who has given a deed to secure his debt can have set aside in equity a sale by the creditor in exercise of the power conferred by the deed, and injunction to prevent interference with the debtor's possession of the property conveyed by the deed, he must pay or tender to the creditor the amount of principal and interest due.'") (quoting *Coile v. Fin. Co. of Am.,* 221 Ga. 584, 585, 146 S.E.2d 304 (1965)).

This is an application of the more general principle that "[h]e who would have equity must do equity."O.C.G.A. § 23–1–10. Therefore, as plaintiff has failed to live up to his promise to pay his mortgage and as he presumably is living, and has been living

2012 WL 3989961

for some time, rent-free on these premises, he is not entitled to equitable relief enjoining any future foreclosure sale. That does not mean, however, that he will not be entitled to any legal remedies for properly alleged claims relating to a wrongful foreclosure.

### CONCLUSION

The Court concurs with the magistrate judge that, as presently drafted, plaintiff's claims are subject to dismissal. The Court will give the plaintiff **until October 12, 2012** to file an amended complaint that addresses the defects in his existing complaint. Should plaintiff fail to do so, an Order will be issued dismissing the present Complaint without prejudice.

For the present, the Court **GRANTS** defendant's Motion to Dismiss [5–1] the present complaint, but as

this dismissal is without prejudice and as the Court is giving plaintiff additional time to file an amended complaint, the Clerk is directed not to enter a judgment until after the expiration of the time period for plaintiff to file an amended complaint. Upon expiration of that deadline, the Court will determine what action should be taken. The Court **DENIES AS MOOT** defendant's Motions to Strike [27, 28]. Given the above ruling, defendant has not adequately briefed its motion to cancel the Notice of Lis Pendens [5–2]. Accordingly, that motion is **DENIED WITHOUT PREJUDICE.**

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3989961

---

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.



2012 WL 3516477
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia,
Atlanta Division.

James HARVEY and Jane Harvey, Plaintiff,
v.
DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee of The Home Equity
Mortgage Loanasset−Backed Certificates,
Series INABS 2006−C, Defendant.

Civil Action No. 1:12−CV−
1612−RWS.    |    Aug. 14, 2012.

**Attorneys and Law Firms**

Amit Kavsik Patel, Law Office of Amit K. Patel,
Alpharetta, Latrice L. Latin, The Latin Law Group,
LLC, Roswell, GA, for Plaintiff.

Gregory M. Taube, Yasamine Julia Christopherson,
Nelson Mullins Riley & Scarborough, Atlanta, GA, for
Defendant.

### *ORDER*

RICHARD W. STORY, District Judge.

**\*1** Plaintiffs originally filed this action in the
Superior Court of Gwinnett County. On May 18, 2012,
Defendant filed a Motion to Dismiss [3] on the grounds
that Plaintiffs' Complaint fails to state a claim upon
which relief can be granted and for Plaintiff's failure to
serve Defendant.

Plaintiffs filed no response to the Motion to Dismiss.
However, on June 19, 2012, Plaintiffs filed a Motion
for an Extension of Time to amend their Complaint [7].
Plaintiffs did not attach a proposed amended complaint
to their Motion or provide any detail regarding the
contemplated amendment. Defendant filed a Response
[8] to Plaintiffs' Motion and urged the court to deny the
Motion due to Plaintiffs' failure to provide a proposed
amended complaint or provide a detailed description
thereof. Defendant also urged the Court to rule on its

pending Motion to Dismiss which is now unopposed.
Plaintiffs filed no reply to Defendant's Response.

Federal Rule of Civil Procedure Rule 15 states:

(1) **Amending as a Matter of Course.** A party may
amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive
pleading is required, 21 days after service of a
responsive pleading or 21 days after service of a
motion under Rule 12(b), (e), or (f), whichever is
earlier.

(2) **Other Amendments.** In all other cases, a party
may amend its pleading only with the opposing
party's written consent or the court's leave ...

FED. R. CIV. PRO. 15. Federal Rule 15 further
provides, "leave shall be freely given when justice
so requires." *Id.* Even so, granting leave to amend is
not automatic. *Underwriters at Interest on Cover Note
JHB92M10582079 v. Nautronix, Ltd.,* 79 F.3d 480,
484 (5th Cir.1996) ("approval of motion to amend
is not automatic"); *Ashe v. Corley,* 992 F.2d 540,
542 (5th Cir.1993) ("leave to amend is by no means
automatic"); *Faser v. Sears Roebuck & Co.,* 674 F.2d
856, 860(1 1th Cir.1982). Indeed, district courts have
"extensive discretion" in deciding whether to grant
leave to amend and may choose not to allow a party
to amend "when the amendment would prejudice the
defendant, follows undue delays or is futile." *Campbell
v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir.1999).

Because Plaintiffs have failed to provide any details
regarding the nature of an amended Complaint, the
Court is unable to determine whether an amended
complaint would have merit. In spite of Defendant's
Response pointing out this failure in Plaintiff's Motion,
Plaintiffs have not supplemented the record in any
manner. Therefore, Plaintiffs' Motion for Extension of
Time to File Amended Complaint [7] is **DENIED.**

Moreover, Defendant's Motion to Dismiss [3] is
unopposed. In the Complaint, Plaintiffs assert a claim
for wrongful foreclosure. Defendant asserts that the
Complaint fails to state a claim for which relief can be

Case: 15-14506    Date Filed: 12/16/2015    Page: 49 of 49

granted and seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**\*2** When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint."*Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n. 1 (11th Cir.1999); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.*

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Twombly,* 127 U.S. at 561 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." *Id.* at 556.The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Id.*

The basis for Plaintiffs' wrongful foreclosure claim appears to be that Defendant was not the holder of the security deed at the time of foreclosure because the assignment to Defendant was executed without authority. Alternatively, if the assignment was valid, Defendant did not have possession of the note and could not, therefore, foreclose. " 'Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal conneciton between the breach of that duty and the injury it sustained, and damages.'"*DeGolyer v. Green Tree Servicing, LLC,* 291 Ga.App. 444, 448, 662 S.E.2d 141 (2008) (*quoting Heritage Creek Dev. Corp. B. Colonial Bank,* 268 Ga.App. 369, 371, 601 S.E.2d 842 (2004). Defendant asserts, and the Court agrees, that Plaintiffs have failed to alleged any breach of duty by Defendant caused the injury purportedly sustained by Plaintiffs. When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure. Failure to make the proper loan payments defeats any wrongful foreclosure claim. See *Warque v. Taylor, Bean, & Whitaker Mortg. Corp.,* Civil Action No. 1:09–CV1906–ODE–CCH, 2010 U.S. Dist. LEXIS 142129, at \*14–15 (N.D.Ga. July 30, 2010) (Hagy, M.J.). Therefore, Plaintiffs have failed to allege a plausible claim for wrongful foreclosure, and Defendant is entitled to dismissal of the action.

**\*3** Based on the foregoing, Plaintiffs' Motion for Extension of Time [7] is **DENIED** and Defendant's Motion to Dismiss [3] is **GRANTED** .The Clerk shall close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3516477

---

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.